Lawrence Hernandez v. Hardy Graves, as Constable, etc.,

4 So. (2nd) 113
En Banc
Opinion Filed October 7, 1941

*Whitaker Brothers,* for Petitioner;

*J. Tom Watson,* Attorney General, *D. Stuart Gillis,* Assistant Attorney General, and *Woodrow M. Melvin,* Special Assistant Attorney General, for Respondent.

Whitfield, J.—In a petition on which a writ of habeas corpus was issued by this court, it is alleged that petitioner is illegally incarcerated under a warrant issued by a Justice of the Peace upon an affidavit charging that the petitioner "did have in his possession an electric coin operated machine, the mechanism and operation of said machine being as follows:

"That said machine is stocked with printed questions, about 3000 questions to the roll; the player deposits five cents in the coin receptacle, whereupon one of the printed questions will appear in full view behind a glass plate, and simultaneously therewith an automatic timing device starts operating so that the player must answer the question within the twenty seconds allowed by the timing device; with each question, and printed thereon, are given from two to seven alternative answers, only one of which is correct; each of these alternative answers is designated by a numeral and on the machine are seven keys similar to typewriter keys, and on each key is a numeral in a series from one to seven; there are two other keys, on one of which is the word 'true' and on the other the word 'false'; so that sometimes the question is whether the statement which appears behind the plate glass is true or false, and may be answered by the true or false keys instead of the numbered keys; when the player has deposited the coin and in response thereto the printed question has come into view, the player reads his question and the related alternative answers thereto, he then determines upon the alternative answer, which according to his knowledge or judgment is the correct answer and depresses the corresponding key, if his answer be correct the machine automatically awards him a cash prize, the amount of which he has been advised before the commencement of the play. When the play is complete the printed question then protrudes from the machine in such manner that the player may obtain it, and on the reverse side thereof he will find printed the correct answer together with the references which will verify its correctness; the used printed question

is not again used in the same machine, but disappears
from it in the manner stated; instructions are printed
on the face of the machine as to how it is to be
operated and there are printed cards showing the sub-
ject or subjects from which the questions presently
being asked by the machine are taken, as well as the
amount of the award for the correct answers; the
questions cover current events and topics of popular
interest in the community where the machine is
located, and the questions so selected with which to
stock said machine are so framed, and the verifica-
tions and references on the back thereof, as to
advertise products, merchandise or literature of par-
ticular interest in the locality; the machine is so
arranged that it can only give the result which the
player has determined is correct; there are no
mechanical devices within or about the machine by
which the will of the player may be diverted, or by
which if he gives the correct answer he may by any
chance be cheated of the award which he would be
entitled to receive upon making the correct answer;
the operations of the machine throughout are positive
and directly responsive and are not beset by any
hazards or chances within the mechanism of the
machine which would permit any interference with
or deflection from the will and control of the player.
Said machine is commonly known as the I. Q. or Intel-
ligence Quotient machine and is an electric coin
operated machine, in which the player deposits five
cents, and if the player answers the questions cor-
rectly, he receives a prize and is therefore in violation
of the gaming statutes of the State of Florida, and
particularly c. 18143, Acts of 1937, and the possession
of same is contrary to the statute in such case made

and provided, against the peace and dignity of the State of Florida."

Respondent replied that petitioner was held under the warrant as alleged.

Chapter 18143, Acts of 1937, contains the following:

"Section 1. It shall be unlawful:

"(a) To manufacture, own, store, keep, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to sell, rent, lease, let on shares, lend or give away, or permit the operation of, or for any person to permit to be placed, maintained, or used or kept in any room, space, or building owned, leased or occupied by him or under his management or control, any slot machine or device or any part thereof as hereinafter defined; . . .

"Section 2. Any machine or device is a slot machine or device within the provisions of this Act if it is one that is adapted for use in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated, and by reason of any element of chance or other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, or the user may secure additional chances or rights to use such machine, apparatus or device, even though it may, in addition to any element of chance or unpredictable outcome of such operation, also sell, deliver

or present some merchandise, indication of weight, entertainment or other thing of value."

Section 3 prescribes penalties for violation of the statute.

The brief of counsel for petitioner states:

"The only question before this Court for determination is, Does the possession or operation of the . . . machine as set out and described in said warrant, constitute a violation of the gaming statutes of the State of Florida and particularly c. 18143 of the Acts of 1937?"

Under the statutes it is a criminal offense to possess any slot machine or device if it is adapted for use in such a way that as a result of the insertion of any piece of money or coin or other object, such machine or device is caused to operate or may be operated, and by reason of *any* element of chance or unpredictable outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money.

In this case the machine or device is a slot machine or device that is adapted for use in such a way that its operation as the result of the insertion of a coin involves an element of chance for the operator to win a stated cash prize if he correctly answers an unknown or unpredictable question in twenty seconds after it is disclosed by the machine, or to lose the coin inserted in the machine if the player does not, within twenty seconds after it is shown, correctly answer an unpredictable question posed by the machine and not known to, or controlled by, the player. Such operation of the machine affords an element of chance or unpredictable outcome of the operation of the machine involving the winning of a stated cash

prize or the loss of the coin inserted in the machine. This necessarily is a violation of the quoted statute. See Weathers v. Williams, 133 Fla. 367, 182 So. 764; Eccles v. Stone, 134 Fla. 113, 183 So. 628. The *question* is made known only after the coin has been inserted in the machine.

The alternative answers to the question, shown with the question by the machine, tend to confuse and delay even a well informed, skillful and composed player of the machine who is required to indicate within twenty seconds the correct answer to the question that was unknown to, and unpredictable by, the player before the question was posed by the machine and the twenty seconds of time to answer began to run.

Chapter 20956, Acts of 1941, is a revenue statute and it is expressly enacted in Sec. 19 that "this section shall not be construed to authorize the use of any machine, contrivance or device for gambling or as a game of chance," and in Sec. 20 that "this Section shall not be construed to authorize the use of any game or device for gambling or as a game of chance."

Petitioner should be remanded.

BROWN, C. J., TERRELL and THOMAS, J. J. concur.

BUFORD, CHAPMAN and ADAMS, J. J., dissent.

CHAPMAN, J., dissenting—The record in this case discloses that Lawrence Hernandez was arrested and detained in custody by Hardy Graves, a constable of Hillsborough County, Florida, under a warrant issued by Justice of the Peace of said County, which charged the unlawful possession of an electric coin operating machine, contrary to the provisions of c. 18143, Acts of 1937, Laws of Florida.

On petition of Lawrence Hernandez, this Court issued a writ of habeas corpus, and the electric coin operating machine in his possession, it is contended, is not controvention of c. 18143, *supra,* and is not a gambling device within the meaning of said Act because: (a) the machine does as the player directs; (b) that in the operation thereof there is no element of chance; (c) the machine is not adaptable to gambling; (d) the result of the operation thereof is clearly predictable.

The electric coin operating machine is referred to as an "I. Q." or "Intelligence Quotient" machine. When a coin is placed in the receptacle one of the printed questions will appear and simultaneously a timing device starts operating and the player is required to answer the question within twenty seconds. Each question contains two to seven answers, but only one can be correct. The alternative answer is designated by numerals on the machine similar to typewriter keys. There are two of these keys ond one is marked "True" and the other "False". The questions appearing behind the plate sometimes may be true and sometimes false and may be answered by turning the "True" or "False" keys instead of the number keys. The player reads the printed questions and related answers and determines from his own knowledge or judgment the correct answer, and in so doing presses the corresponding key. If his answer be correct, the machine automatically awards him a cash prize. The correct questions and answers, after the play is completed, on a piece of paper protrudes from the machine and is detachable. The questions are taken from current events, or literary, scientific or mathematical topics, or they may be predicated upon

facts affecting the locality where the machine is operated. The machine is responsive to the will of the player. If his answers to the questions are correct, he will be awarded a prize; if his answers are incorrect, he loses the amount of the coin placed in the machine. Or, in other words, the profits and losses of the player are determined by the correctness or incorrectness of the answers given by the player within the alloted twenty seconds.

Counsel for the respondent contends that the apparatus above described falls within the inhibitions of Sec. 2 of c. 18143, *supra*. That it is a slot machine because it operates: (1) by the insertion of a coin; (2) the outcome of the operation is governed by an element of chance; (3) that the player or operator receives something of value. Wheathers v. Williams, 133 Fla. 367, 182 So. 764; Eccles v. Stone, 134 Fla. 113, 183 So. 628, are cited and relied upon to sustain their view. Each of these cases has been reviewed in light of this contention.

We are unable to follow the reasoning advanced. The unsoundness of the contention is that there is no element of chance whatsoever in the machine, and whether or not the player is by the machine compensated rests exclusively on the correctness or incorrectness of the answers of the player to the questions propounded and to answer the same within the twenty second period. It is in many respects similar to receiving a reward or prize for answering correctly certain questions propounded as in a spelling "bee" where a prize is given to the one spelling correctly a list of words. If a merchant offers a prize of $100.00 to the football player making the first touchdown, or a baseball player for knocking a home

run, it cannot be classified as gambling. We are unable on this record to see a violation of c. 18143, *supra*. The power to make unlawful the above described machine is vested in the Legislature. See Rouse v. Sisson, 190 Miss. 276, 199 So. 777, where it was held that the machine above described was not a gambling device.

I think the petitioner should be discharged.

BUFORD, and ADAMS, J. J. concur.