219 So.2d 417 (1969)
Patricia A. MEYER and Russell E. Fraser, As Trustee, Appellants,
v.
CITY OF OAKLAND PARK, Florida, a Municipal Corporation, et al., Appellees.
No. 38004.
Supreme Court of Florida.
February 26, 1969.
Ross, Norman & Cory and Robert W. Crawford, Fort Lauderdale, for appellants.
Henry J. Prominski, of Miller, Tucker, Roth & Prominski, Fort Lauderdale, for appellees.
*418 ADKINS, Justice.
This appeal is from a judgment of the Circuit Court validating a proposed issue of Sanitary Sewerage Improvement Certificates of the City of Oakland Park, Florida not exceeding $500,000.00. The program was initiated under the authority of Fla.Stats., Ch. 170 and the City Charter, Ch. 59-1622, Article XXV, Special Acts of Florida 1959.
The Appellants are taxpayers who filed answers in the validation proceeding and shall be referred to as the "Defendants." The Appellee will be referred to as the "City."
On August 16, 1967 by resolution the City found that it was necessary for the continued preservation of the health, welfare, convenience and safety of the City and its inhabitants to construct the project. The City by this resolution instructed its consulting engineers to prepare an assessment plan showing the area to be assessed, with plans and specifications and an estimate of the cost of the project. The area to be assessed was designated Special Improvement District No. 1.
In this resolution the City estimated the cost of the project at $2,700,000.00, $500,000.00 of which would be payable by the levy and collection of special assessments "against the properties abutting, adjoining or contiguous to the improvements to be constructed."
By resolution adopted November 15, 1967, the City Council determined to construct the project, adopting and approving the assessment plat, plans and specifications, and estimates of cost submitted by the consulting engineers. The City then determined the estimated cost of the project and the manner of payment. It was also determined that the sewer improvement "will serve and especially benefits" the area described as Special Improvement District No. 1 and that such special benefits were to be determined and prorated according to the square footage of the respective properties specially benefited. This resolution was properly published.
On December 5, 1967, the City, by resolution, adopted the assessment roll and fixed the date, time and place at which property owners to be assessed could appear before the City Council and be heard as to the advisability of making the improvements, the cost thereof, the manner of payment therefor, and the amount thereof to be assessed against each property improved. Proper notice by mail and by publication was given. The Defendants, as well as other property owners, appeared at this hearing and were heard. Thereafter, the City Council by resolution equalized and adjusted the assessments appearing on the assessment roll and determined to proceed with the construction of the project. This resolution also provided that upon completion of the project each assessment would be credited, pro rata, for the difference between the amount of the assessment confirmed and the actual cost of the project, but in no event should the final assessments exceed the amounts of benefits confirmed by the resolution.
Thereafter, the City Council adopted a resolution authorizing and providing for the issuance of not exceeding $500,000.00 Sanitary Sewerage Improvement Certificates of the City, and directing the City attorney to institute appropriate proceedings for the validation of the Certificates.
The Defendants answered the complaint for validation and an extensive hearing was held. In the final judgment validating the certificates the lower court found:
"Due process of law was afforded to all persons owning property subject to special assessments for the payment of such project and the lands and properties assessed by the Plaintiff pursuant to the authority contained in Chapter 170, Florida Statutes, will be specially benefited by the improvements to be constructed."
*419 The Defendants contend, primarily, that the record before the City Council and the trial court demonstrates that no increase in value to any lands assessed will result from the proposed sewer improvement.
Some of the defendants are owners of large tracts of land which are adversely affected by the assessments being made upon a square foot basis. Fla.Stats., Sec. 170.02, provides that the special benefits shall be determined and prorated according to the front footage of the respective properties specially benefited by said improvement, or "by such other method as the governing body of the municipality may prescribe." The City Charter, Ch. 59-1622, Article XXV, Sec. 11 (Laws of Florida, Spec.Acts 1959, p. 2995) provides as follows:
"Special assessments upon the property deemed to be benefited by a public improvement shall be by any one or a combination of the following methods:
"(a) upon an area or square foot basis as to all property specially benefited;
"(b) in proportion to the benefits which may result from the improvement;
"(c) by the foot frontage of the property bounding or abutting upon the improvement;
"(d) upon a fair and equitable basis according to benefits received."
This, of course, is specific authorization for special assessments upon a square foot basis as to all property specially benefited. Even under general law benefits from local improvements may be prorated according to superficial area, if the assessments do not exceed the benefits. See City of Ft. Myers v. State, 95 Fla. 704, 117 So. 97 (1928). If it appears that the application of the square footage results in substantial or at least a rough approximation to apportionment, it should be sustained. This method for the determination in proration of the special benefits in this project is approved.
Defendants contend that a varied assessment must add something to the value of the premises benefited, above its ordinary value, and such benefits must be actual and not merely speculative or conjectural. In support of this contention, the Defendants presented evidence in the form of opinions of an appraiser that sewer assessments would be a financial detriment rather than a benefit to the property assessed.
This Court in Atlantic Coast Line Railroad Company v. City of Winter Haven, 114 Fla. XXV, 151 So. 321, said:
"The view usually taken on the subject as to what property is subject to special assessment for public improvements is the one from the standpoint of enhancement in the market or utility value of the real property affected. If specially assessed property is, or may be, enhanced in value by the improvement when made, it is subject to an assessment in proportion to the benefits it will likely receive from the execution of the work. And, in determining probable benefits, the general enhancement in value of the locality as a whole in which the improvement is to be made may be taken into consideration in making an apportionment of benefits to the individual properties situate therein." (Emphasis supplied)
Many elements enter into the question of determining and prorating benefits in a case of this kind. They are physical condition, nearness to or remoteness from residential and business districts, desirability for residential or commercial purposes, and many other peculiar to the locality where the lands improved are located. As stated by the Court in City of Ft. Myers v. State of Florida and Langford, 95 Fla. 704, 117 So. 97, 104:
"No system of appraising benefits or assessing costs has yet been devised that *420 is not open to some criticism. None have attained the ideal position of exact equality, but, if assessing boards would bear in mind that benefits actually accruing to the property improved in addition to those received by the community at large must control both as to benefits prorated and the limit of assessments for cost of improvement, the system employed would be as near the ideal as it is humanly possible to make it."
The term "benefit," as regards validity of improvement assessments, does not mean simply an advance or increase in market value, but embraces actual increase in money value and also potential or actual or added use and enjoyment of the property. Vacant lots and lands, may, and usually do, receive a present special appreciable benefit from the construction of a sewer in proximity with and accessible by them for sewerage purposes sufficient to sustain an assessment made on the basis of benefits. A reasonable approach to the question of best possible use is a determination of what can be done with the property by improvements which are reasonably attainable and which can enhance the value under all present circumstances or those foreseeable in the very near future.
In its final resolution after sitting as an equalizing board and hearing the views of the property owners, the City Council provided that the final assessment in no event should exceed the amounts of benefits. Both the City Council and the trial judge found that the property involved was specially benefited by the improvements. There is a presumption that such findings as to benefits are correct and this presumption can be overcome only by strong, direct, clear and positive proof. The apportionment of the assessments is a legislative function and if reasonable men may differ as to whether land assessed was benefited by the local improvement, the determination of the City officials as to such benefits must be sustained. Rosche v. City of Hollywood (Fla. 1952) 55 So.2d 909; Klein v. City of New Smyrna Beach (Fla. 1963) 152 So.2d 466. This presumption has not been overcome by the evidence in this case and there is ample competent testimony to support the final judgment entered by the Circuit Judge. The judgment is affirmed.
ERVIN, C.J., and ROBERTS, DREW, and BOYD, JJ., concur.